Kerry Hunt, Tenn. Bar. No. 037742*
Charles M. Brandt, D.C. Bar No. 90029325*
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
KerryHunt@pacificlegal.org
CBrandt@pacificlegal.org

Luke A. Wake, Cal. Bar No. 264647*
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
LWake@pacificlegal.org

*Pro Hac Vice Pending

Attorneys for Plaintiff
Slayden Plumbing & Heating, Inc.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SLAYDEN PLUMBING & HEATING, INC., <br><br>Plaintiff, <br><br> v. <br><br> GENERAL SERVICES ADMINISTRATION; JEFFREY KOSES, in his official capacity as Senior Procurement Executive, General Services Administration; DEPARTMENT OF DEFENSE; JOHN TENAGLIA, in his official capacity as Principal Director, Defense Pricing and Contracting, Office of Secretary of Defense; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; MARVIN HORNE, in his official | Case No. 3:25-cv-00310 |

capacity as Assistant Administrator for Procurement, National Aeronautics and Space Administration; FEDERAL ACQUISITION REGULATORY COUNCIL; KEVIN RHODES, in his official capacity as Chair of the Federal Acquisition Regulatory Council and Administrator of the Office of Federal Procurement Policy, Office of Management and Budget; and RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget,

Defendants.

# COMPLAINT
## (5 U.S.C. §§ 702, 706)

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 702, 706.

2. The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and to vacate unlawful agency action under 5 U.S.C. § 706.

3. Venue is proper under 28 U.S.C. § 1391(e)(1)(B), (C), because Defendants are agencies and officers of the United States; Plaintiff resides within the District of Alaska; this action does not involve real property within the meaning of the federal venue statute; and "a substantial part of the events or omissions giving rise to the claim occurred" in Alaska. *See* 5 U.S.C. § 703

*Slayden Plumbing & Heating, Inc. v. GSA, et al.*   2
No. 3:25-cv-00310
Case 3:25-cv-00310   Document 1   Filed 11/05/25   Page 2 of 20

(venue for actions under the Administrative Procedure Act is generally proper in "a court of competent jurisdiction").

## INTRODUCTION

4. In 1979, Bill Slayden began a small plumbing business performing residential and light commercial jobs for local customers out of his garage.

5. Over the next forty years, Bill's hard work and pioneering spirit would grow Slayden Plumbing & Heating, Inc. (Slayden) into a leading mechanical contractor and employer to over sixty people.

6. Today, the vast majority of Slayden's work and revenue comes from large-scale federal construction projects thanks to Slayden's extraordinarily skilled workforce and unblemished record of providing its services on time and within budget.

7. But with the (unauthorized) stroke of a pen, President Biden torpedoed Bill's business.

8. President Biden directed through Executive Order that all federal contractors enter contracts with labor unions—called "project-labor agreements" (PLAs)—to *even compete* for large-scale federal construction projects.

9. Slayden cannot comply with this mandate because it would force the company to enter a contractual relationship with a labor union in which Slayden has no leverage or negotiating power. Because the power dynamic in

*Slayden Plumbing & Heating, Inc. v. GSA, et al.*  3
No. 3:25-cv-00310
Case 3:25-cv-00310    Document 1    Filed 11/05/25    Page 3 of 20

this forced relationship is entirely one-sided, the mandate renders Slayden unable to avoid requirements that Slayden's employees affiliate with and pay dues to unions (something Slayden's employees do not want to do), and unable to offer its services at the lowest rates.

10. This mandate puts Slayden at a competitive disadvantage relative to its peers that can comply with the PLA mandate and forces Slayden to choose between competing for large-scale federal construction projects and honoring its employees' preference for independence.

11. In announcing the mandate, President Biden claimed to exercise vast powers under the Federal Property and Administrative Services Act (Procurement Act), 40 U.S.C. § 101 *et seq.*

12. The Procurement Act does not give the President power to impose such a mandate.

13. Congress delegated only a limited authority for the President to oversee the internal functions of the government's procurement process. The President cannot stretch that authority to impose regulatory mandates on contractors that Congress never contemplated and would likely never approve.

14. But if the Procurement Act is the blank check the President claims, then it violates the bedrock principle that Congress may not delegate its exclusive power to make law.

# PARTIES

15. Plaintiff Slayden Plumbing & Heating, Inc. (Slayden) is a mechanical contractor incorporated and operating in the State of Alaska.

16. Slayden has successfully performed as a subcontractor on many federal contracts, in turn providing employment opportunities to a variety of craftsmen. These craftsmen offer services essential to federal construction projects, such as welding, plumbing, insulation, and sheet metal work.

17. Slayden has also committed to expanding the number of those able to ply these trades through an apprenticeship program that trains aspiring craftsmen in the skills they need to succeed in these industries.

18. To ensure that it can perform the highly technical work that government facilities require, Slayden employs a full-time engineering staff and mechanical insulation division. It also maintains a state-of-the-art sheet metal fabrication shop. These capacities, while necessary to much of the work Slayden performs for the federal government, come with high overhead costs.

19. Thanks to Slayden's success, it can afford to offer its employees a generous compensation package, which includes paid holidays, sick leave, a generous 401(k) match, significant medical coverage, profit-sharing bonuses, and other benefits.

20. Slayden's employees have rejected attempts to unionize in large part because they are satisfied with their employment benefits.

21. The General Services Administration (GSA) is one of the agencies responsible for issuance of the Final Rule. Federal Acquisition Regulation: Use of Project Labor Agreements for Federal Construction Projects, 88 Fed. Reg. 88708, 88709 (Dec. 22, 2023) ("Final Rule").

22. Jeffrey Koses is Senior Procurement Executive for GSA. Mr. Koses is currently serving on the FAR Council under 41 U.S.C. § 1302(a)(2)(A)(i) as a delegate of the GSA Administrator.

23. The Department of Defense (DoD) is one of the agencies responsible for issuance of the Final Rule. Under Executive Order 14,137, DoD may also be referred to as the "United States Department of War" in certain contexts. Restoring the United States Department of War, 90 Fed. Reg. 43893, 43893 (Sep. 5, 2025).

24. John Tenaglia is Principal Director for Defense Pricing and Contracting at DoD. Principal Director Tenaglia is currently serving on the FAR Council under 41 U.S.C. § 1302(a)(2)(A)(i) as a delegate of the Secretary of Defense.

25. The National Aeronautics and Space Administration (NASA) is one of the agencies responsible for issuance of the Final Rule.

26. Marvin Horne is Assistant Administrator for Procurement for NASA. Assistant Administrator Horne is currently serving on the FAR Council under 41 U.S.C. § 1302(a)(2)(A)(i) as a delegate of the NASA Administrator.

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 6
No. 3:25-cv-00310
Case 3:25-cv-00310   Document 1   Filed 11/05/25   Page 6 of 20

27. DoD, GSA, and NASA comprise the Federal Acquisition Regulatory Council ("the FAR Council").

28. The FAR Council is an entity established by Congress "to assist in the direction and coordination of Government-wide procurement policy and Government-wide procurement regulatory activities in the Federal Government." 41 U.S.C. § 1302(a). The Council is comprised of the Administrator of the Office of Federal Procurement Policy (OFPP), the Secretary of Defense, the NASA Administrator, and the GSA Administrator. *Id.* § 1302(b)(1). These officials have designated subordinate officers "to serve on and attend meetings of the Council in [their] place." *Id.* § 1302(b)(2)(A).

29. Kevin Rhodes is Acting Administrator of OFPP. Acting Administrator Rhodes is an official member of the FAR Council and serves as FAR Council Chair.

30. OFPP is an office within the Office of Management and Budget (OMB). 41 U.S.C. § 1101(a).

31. Russell Vought is Director of OMB.

32. Each Defendant is sued in his official capacity only.

## FACTUAL ALLEGATIONS

### *Executive Order No. 14063 (EO 14063)*

33. On February 4, 2022, President Biden issued EO 14063, wherein the President claimed to exercise powers delegated to him under the

Procurement Act, 40 U.S.C. § 101 *et seq*. *See* Exec. Order No. 14063, 87 Fed. Reg. 7363 (Feb. 4, 2022).

34. EO 14063 mandated that "agencies shall require every contractor or subcontractor engaged in construction on [a large-scale construction project] to agree, for that project, to negotiate or become a party to a project labor agreement with one or more appropriate labor organizations." 87 Fed. Reg. at 7364.

35. EO 14063 defines a "project labor agreement" as "a pre-hire collective bargaining agreement with one or more labor organizations that establishes the terms and conditions of employment for a specific construction project." *Id.*

36. It defines a "[l]arge-scale construction project" as "a Federal construction project within the United States for which the total estimated cost of the construction contract to the Federal Government is $35 million or more." *Id.* at 7363.

37. EO 14063 mandates that these required project labor agreements include terms providing "guarantees against strikes, lockouts, and similar job disruptions" and that they "set forth effective, prompt, and mutually binding procedures for resolving labor disputes . . . ." *Id.* at 7364.

38. EO 14063 foresees limited exemptions from these requirements.

*Slayden Plumbing & Heating, Inc. v. GSA, et al.*   8
No. 3:25-cv-00310
Case 3:25-cv-00310   Document 1   Filed 11/05/25   Page 8 of 20

39. President Biden directed the FAR Council to "propose regulations" for the implementation of EO 14063. *Id.* at 7365.

### *FAR Council Promulgates Implementing Regulation*

40. On August 19, 2022, the FAR Council published a proposed rule to implement EO 14063. *See* 87 Fed. Reg. 51044.

41. On December 22, 2023, following notice and comment, the FAR Council issued a final rule, which took effect on January 22, 2024. 88 Fed. Reg. 88708.

42. Consistent with EO 14063, the Final Rule requires agencies to include a PLA mandate in contracts related to large-scale construction projects unless one of three narrow exceptions applies. 88 Fed. Reg. at 88727–28.

43. An agency's "senior procurement executive" may grant exceptions from the PLA Mandate when: (1) requiring PLAs would not advance the government's interests in economy and efficiency; (2) market research indicates that requiring PLAs would substantially reduce fair, reasonable, and adequate price competition; or (3) requiring PLAs would be inconsistent with federal law, executive order, or presidential memoranda.

44. These exemptions are never automatic.

45. That is because, as a rule, PLAs are required unless the head of the contracting agency exercises his discretion to make an exemption. Nothing

*Slayden Plumbing & Heating, Inc. v. GSA, et al.*   9
No. 3:25-cv-00310
Case 3:25-cv-00310   Document 1   Filed 11/05/25   Page 9 of 20

in EO 14063 or the Final Rule requires the agency head to ever make an exemption in any case.

46. While the Final Rule enumerates the same requirements for a PLA's terms as EO 14063, it also empowers agencies to "include[] any additional terms . . . deem[ed] necessary to satisfy [their] needs." 88 Fed. Reg. at 88709.

47. The Final Rule does not consider the likelihood that organized labor would use the leverage the Final Rule gives it to force requirements on federal contractors beyond those enumerated in the Final Rule.

48. The Final Rule also does not consider the extent to which such leverage may be exacerbated in markets with a dominant labor union, such as Alaska.

### *Trump OMB Confirms the PLA Mandate Will Be Enforced*

49. On June 12, 2025, the Director of OMB, Russell Vought, issued a memorandum to the heads of the executive departments confirming that EO 14063 remains in effect. *See* Exhibit A.

50. The memo states that "the Trump Administration supports the use of PLAs when those agreements are practicable and cost effective." *Id.*

51. The memo also makes clear that "blanket deviations prohibiting the use of PLAs are precluded." *Id.*

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 10
No. 3:25-cv-00310
Case 3:25-cv-00310   Document 1   Filed 11/05/25   Page 10 of 20

### *Injury to Slayden Plumbing & Heating, Inc.*

52. Historically, approximately 80% of Slayden's revenue comes from work on large-scale federal construction projects.

53. Given Slayden's relatively high overhead costs—which are necessary for the work Slayden often does for the federal government—it cannot easily transition to focusing solely on private projects where the wide scope of Slayden's capabilities is less essential.

54. But the Final Rule now bars Slayden from bidding on projects it is willing and able to perform unless it agrees to enter a PLA with a labor union.

55. Because Slayden is a subcontractor, Slayden has no right to negotiate the terms of the PLAs that it must sign on to for these projects.

56. The Final Rule provides that "subcontractors do not negotiate the PLA directly," but "will ultimately need to . . . sign on to the PLA negotiated by the prospective offeror or prime contractor in order to participate on the project." 88 Fed. Reg. at 88724.

57. Accordingly, Slayden must agree to a PLA to access large-scale federal construction projects even though Slayden objects to entering such a contract at all, and even though Slayden has no right or ability to negotiate its terms and accompanying obligations. Slayden objects to conditioning federal projects on entrance into what amounts to an adhesion contract with a third party.

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 11
No. 3:25-cv-00310
Case 3:25-cv-00310    Document 1    Filed 11/05/25    Page 11 of 20

58. Slayden must also agree to a PLA—which binds all employees who work on covered projects governed by the Final Rule—despite the fact that its employees do not want to be so bound.

59. Slayden and its employees view Slayden's compensation package as superior to what a union could offer, and Slayden's employees therefore do not see value in joining labor unions or paying union dues.

60. Consequently, Slayden plans to pursue the only other alternative, which is to abstain from bidding and lose out on opportunities to secure work for Slayden's employees and revenue for the company.

61. Slayden has already withdrawn bids for two projects at Joint Base Elmendorf-Richardson because of the Final Rule, which contributed heavily to Slayden's recent decision to lay off employees.

62. But for the (unlawful) PLA mandate, Slayden would have continued to compete for projects like those at Joint Base Elmendorf-Richardson and the many others it has already completed for the federal government.

63. Slayden has lost lucrative contracting opportunities and will continue to do so while the Final Rule remains in place.

### DECLARATIVE AND INJUNCTIVE RELIEF ALLEGATIONS

64. All preceding paragraphs are incorporated herein by reference.

65. Slayden is harmed by the unlawful Final Rule.

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 12
No. 3:25-cv-00310
Case 3:25-cv-00310    Document 1    Filed 11/05/25    Page 12 of 20

66. The Final Rule prevents Slayden from bidding on federal contracts worth over $35 million. It has already forced Slayden to withdraw two bids from federal projects.

67. A decision that (1) declares the Biden EO and Final Rule to be outside the scope of the President's authority under the Procurement Act, or that the Procurement Act is an unconstitutional delegation of legislative power to the Executive, and that (2) enjoins the enforcement of the Final Rule would allow Slayden to resume bidding on federal projects.

68. Slayden has no plain, speedy, and adequate remedy at law for its injuries. Monetary damages are not available in this case.

69. This case is currently justiciable because the Final Rule went into effect on January 22, 2024. *See* 88 Fed. Reg. 88708.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE ADMINISTRATIVE
### PROCEDURE ACT, 5 U.S.C. § 706(2)(C)
### RULE IN EXCESS OF STATUTORY AUTHORITY

70. The preceding paragraphs are incorporated herein by reference.

71. The executive branch's authority must stem either from an act of Congress or from the Constitution itself. Likewise, an administrative agency's power to promulgate legislative regulations is limited to the authority

delegated by Congress because an agency has no power to act unless and until Congress confers power upon it.

72. The Administrative Procedure Act requires a Court to hold unlawful and set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

73. It is Congress's power to set the terms upon which the federal government will procure goods and services. As such, the Final Rule's PLA requirement must have statutory authority to be lawful.

74. In the Procurement Act, Congress endeavored "to provide the Federal Government with an economical and efficient system for . . . [p]rocuring and supplying property and nonpersonal services, and performing related functions including contracting[.]" 40 U.S.C. § 101(1).

75. The Procurement Act governs the internal procurement processes for the soliciting, reviewing, and accepting of bids by federal employees.

76. The Procurement Act does not govern the private business affairs or labor policies of federal contractors.

77. The requirement that Plaintiffs enter PLAs is not related to the federal government's "system" for government contracting, *see id.* § 101, but to the private business affairs and labor policies of federal contractors.

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 14
No. 3:25-cv-00310
Case 3:25-cv-00310    Document 1    Filed 11/05/25    Page 14 of 20

78. Consequently, the PLA requirement is not within the scope of the Procurement Act and is thus outside the President's authority to impose.

79. The Procurement Act does not otherwise give the President specific authority to impose the PLA requirement.

80. The Act allows the President to "prescribe policies and directives that the President considers necessary to carry out" the Act. 40 U.S.C. §121(a). Such orders must be "consistent with" the Act. *Id.*

81. The purpose of the Act "is to provide the Federal Government with an economical and efficient system for [certain] activities . . . including contracting[.]" *Id.* § 101(1).

82. Any policies or directives the President prescribes in furtherance of this purpose must actually carry out economy and efficiency in federal procurement activities. Conversely, the President may not prescribe policies or directives that do not carry out economy and efficiency, or otherwise carry out the purposes of the Act.

83. The PLA requirement does not further economy or efficiency in federal contracting.

84. The Final Rule was issued "in excess of statutory authority, jurisdiction, authority, or limitations," in violation of 5 U.S.C. § 706(2)(C).

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 15
No. 3:25-cv-00310
Case 3:25-cv-00310    Document 1    Filed 11/05/25    Page 15 of 20

# COUNT II
# VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)
# ARBITRARY AND CAPRICIOUS

85. The preceding paragraphs are incorporated herein by reference.

86. A court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

87. The Final Rule is arbitrary and capricious because in promulgating the regulation, the FAR Council made a decision that ran contrary to the evidence in the administrative record.

88. Specifically, the Final Rule mandates PLAs for large-scale projects on the view that this requirement will promote economy and efficiency in government contracting. But the PLA requirement would *increase* costs for these projects. 88 Fed. Reg. at 88,724 (projecting the PLA requirement would impose added costs between $8.87 and $53.54 million each year).

89. The Final Rule is also arbitrary and capricious because the FAR Council failed to consider the very foreseeable result that organized labor would leverage the PLA requirement to force federal contractors to agree to terms beyond those expressly required by the regulation.

90. The Final Rule also failed to consider the impact of mandating PLAs within markets where dominant labor unions may impose conditions

requiring union membership or other demands that add labor costs or complicate business operations for federal contractors.

92. The Final Rule is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is, therefore, invalid under 5 U.S.C. § 706(2)(A).

## COUNT III
## VIOLATION OF THE U.S. CONSTITUTION, NONDELEGATION DOCTRINE, AND SEPARATION OF POWERS, 5 U.S.C. § 706(2)(B)

92. The preceding paragraphs are incorporated herein by reference.

93. The Administrative Procedure Act requires this Court to hold unlawful and set aside any agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

94. The U.S. Constitution vests all lawmaking powers in Congress, U.S. Const. art. I, § 1, and forbids Congress from giving away these powers.

95. For a statutory delegation to pass constitutional muster, the statute must clearly establish a general policy for the Executive to pursue.

96. Additionally, the statutory text must impose definite boundaries on the President's discretion to make rules affecting legal rights or obligations.

97. If the Procurement Act gives the President a free-floating authority to impose any measures on contractors he thinks "necessary" to "economy" and "efficiency," it unlawfully delegates legislative power.

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 17
No. 3:25-cv-00310
Case 3:25-cv-00310   Document 1   Filed 11/05/25   Page 17 of 20

98. The Procurement Act provides that "[t]he President may prescribe policies and directives that the President considers necessary to carry out this subtitle"—if "consistent" with the Act's operative provisions. 40 U.S.C. § 121(a). It further provides that "[t]he purpose of this subtitle is to provide the Federal Government with an economical and efficient system for . . . [p]rocuring and supplying property and nonpersonal services, and performing related functions including contracting." 40 U.S.C. § 101.

99. The statute nowhere defines "economical" or "efficient" or "necessary."

100. Nor does the statute provide a legislative standard to guide the President on what might or might not promote these principles.

101. The Procurement Act lacks any meaningful limitations on what the President may do under his Procurement Act authority if it authorizes external regulation of federal contractors that the President, in his discretion, deems necessary, economical, or efficient, as the Final Rule purports to do. *See, e.g.*, Government's Opp'n to Pl.'s Mot. for a Prelim. Inj., *Bradford v. Dep't of Labor*, No. 1:21-cv-03283-PAB-STV (D. Colo. 2021), Dkt. No. 21 at 12 ("[T]he [Procurement Act] broadly authorizes the President to 'prescribe policies and directives *that the President considers necessary* to carry out this subtitle.'"); Government's Opp'n to Pl.'s Prelim. Inj. Mot., and Mot. to Dismiss, *Nebraska v. Su*, No. 2:22-cv-00213-JJT (D. Ariz. 2022), Dkt. No. 39 at 14 ("Congress

*Slayden Plumbing & Heating, Inc. v. GSA, et al.* 18
No. 3:25-cv-00310
Case 3:25-cv-00310   Document 1   Filed 11/05/25   Page 18 of 20

concluded that the President should be empowered to decide what he or she 'considers necessary' to improve economy and efficiency in government contracting.").

102. Since the Procurement Act does not guide the President's exercise of discretion in deciding what specific rules should govern federal contractors or impose meaningful limitations on his authority under the Procurement Act, it violates the separation of powers.

## PRAYER FOR RELIEF

**WHEREFORE**, Slayden demands judgment in its favor granting the following relief:

1. A declaratory judgment that the Final Rule is in excess of statutory authority, or alternatively, that the Procurement Act constitutes an unlawful delegation of legislative power and the Final Rule is an improper exercise of Congress's legislative power;

2. An injunction prohibiting the Agency Defendants, the FAR Council, and members of the FAR Council from enforcing the Final Rule;

3. An order setting aside and vacating the Final Rule;

4. An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

5. Any other relief the Court deems just and proper.

DATED: November 5, 2025.

Respectfully submitted,

KERRY HUNT*
LUKE A. WAKE*
CHARLES M. BRANDT*

By  /s/ Kerry Hunt
KERRY HUNT, *Pro Hac Vice*
Tenn. Bar No. 037742

*Attorneys for Plaintiff*
*Slayden Plumbing & Heating, Inc.*

**Pro Hac Vice Pending*